UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CASSANDRE KOWAL, *et al.*,

      Plaintiffs,

      v.

HOOKER & HOLCOMBE, INC., *et al.*,

      Defendants.

21-CV-1299-LJV
DECISION & ORDER

---

On December 21, 2021, the plaintiffs, Cassandre Kowal ("Cassandre") and Samantha Keller ("Samantha"), commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Docket Item 1. They assert claims related to a pension plan in which their mother, Lynn Keller ("Lynn"), participated. *Id.* The plaintiffs have sued Hooker & Holcombe, Inc. ("Hooker & Holcombe"); Hooker & Holcombe Retirement Services, Inc. ("H&H Retirement"); Hooker & Holcombe Investment Advisors, Inc. ("H&H Investment"); Pension Plan A of HealthNow New York, Inc. ("Pension Plan A" or the "Plan"); and HealthNow New York, Inc., d/b/a BlueCross BlueShield of Western New York, n/k/a Highmark Western and Northeastern New York, Inc. ("HealthNow").[1]

On November 7, 2022, the defendants moved to dismiss the complaint, Docket Item 25 (HealthNow defendants); Docket Item 26 (H&H defendants); on December 1,

---

[1] The Court refers to Hooker & Holcombe, H&H Retirement, and H&H Investment as the "H&H defendants." It refers to Pension Plan A and HealthNow as the "HealthNow defendants." Because one of the plaintiffs shares a last name with her mother, the Court refers to the plaintiffs and the decedent by their first names.

2022, the plaintiffs responded, Docket Item 29; and on January 4, 2023, the defendants replied, Docket Item 32 (HealthNow defendants); Docket Item 33 (H&H defendants). On March 8, 2024, this Court heard oral argument.  *See* Docket Item 36.

For the reasons that follow, the defendants' motions to dismiss are granted.

## **FACTUAL BACKGROUND**[2]

Lynn began working for HealthNow in 1988.  Docket Item 1 at ¶ 15.  HealthNow provided a pension plan, Pension Plan A, that was managed by the H&H defendants, *id.* at ¶¶ 13-14, and in which Lynn participated, *id.* at ¶ 16.  The terms of the Plan were included in a document titled "Pension Plan A of HealthNow NY, Inc.," Docket Item 25-5 (some capitalization omitted), and in amendments to that document, Docket Item 25-6.  The terms were summarized in a Summary Plan Description ("SPD").  Docket Item 25-7; *see* Docket Item 1 at ¶ 28.

In December 2013, Lynn was diagnosed with Stage IV cancer.  *See id.* at ¶ 22.  About two weeks later, HealthNow "approved [Lynn's] placement on disability status due to illness."  *Id.* at ¶ 17.  Lynn retired from HealthNow in March 2015.  *Id.* at ¶ 18.  During Lynn's illness, Samantha "acted as [Lynn's] caregiver."  *Id.* at ¶¶ 22-23.  Lynn lived with Samantha from October 2020 until shortly before her death in December 2020.  *Id.* at ¶¶ 24, 27.

---

[2] On a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the complaint, Docket Item 1, and the documents it incorporates by reference or that are "integral" to it, *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), including the Pension Plan A terms, Docket Item 25-5.  The facts are viewed in the light most favorable to the plaintiffs.

After Lynn retired in 2015, the defendants "withheld commencement of [her] [p]ension [p]lan benefit" until summer 2019, "ostensibly because she had been receiving disability benefits." *Id.* at ¶ 19. Due to "paperwork delays," *id.* at ¶ 36, Lynn did not receive the forms needed to designate her daughters as beneficiaries under Pension Plan A until November 2020, *id.* at ¶ 20. She filled out the forms that month. *See* Docket Item 25-8 at 3 (forms with notarized signature dated November 27, 2020).

At some point, Lynn "clearly and unequivocally expressed" an intent "to choose a pension option with a fixed term or survivor benefit." Docket Item 1 at ¶ 21. But due to her "declining health and diminished capacity," Lynn made a "clerical error" while filling out the paperwork. *Id.* at ¶¶ 32-33; *see id.* at ¶ 25. Rather than selecting a pension with a fixed term or survivor benefit on the "Pension Benefit Election" form, she selected an option for a "Life Annuity of $1,158.12 per month and a one-time catch-up payment of $1,910.33."[3] *Id.* at ¶ 32; *see* Docket Item 25-8 at 1. On the "Beneficiary Election" form, however, Lynn designated Cassandre as her primary beneficiary and Samantha as her contingent beneficiary—even though she chose a plan that would not provide benefits after her death. Docket Item 1 at ¶ 34; *see* Docket Item 25-8 at 2.

On December 16, 2020, the pension forms were mailed to the defendants. Docket Item 1 at ¶ 26. Lynn died six days later, *id.* at ¶ 27, and the defendants did not

---

[3] A life annuity is "an annuity payable . . . for the life of the participant that terminates upon the participant's death." 14C Am. Jur. Legal Forms 2d § 200:28. A fixed term annuity is an annuity "for a fixed number of years" that does not "depend on any life expectancy." 33A Am. Jur. 2d Federal Taxation ¶ 12662. A joint and survivor annuity—which the Court assumes the plaintiffs mean when they refer to a "survivor benefit," *see* Docket Item 25-5 at 27 (section of Pension Plan A allowing a participant to elect a joint and survivor annuity)—"provide[s] for payments to be made during the lives of two annuitants and to continue after the death of one, for the life of the surviving annuitant." 33A Am. Jur. 2d Federal Taxation ¶ 12683.

3

receive the forms until after her death, *id.* at ¶ 31.  Cassandre and Samantha assert that had Lynn still been alive at that time, she or they "would have followed up . . . to rectify the clerical error" and change Lynn's election to an option with a fixed term or survivor benefit.  *Id.* at ¶ 35.  In fact, they say, had the defendants sent Lynn "her pension benefit forms in a reasonably timely fashion, she would have had sufficient time to review, clarify, or rectify any clerical error."  *Id.* at ¶ 37.

On January 4, 2021, HealthNow wrote a letter to Lynn's family "identifying 'Hooker & Holcombe' as '[the] pension administrators.'"  *Id.* at ¶ 38.  A second letter—dated January 7, 2021, and sent by Hooker & Holcombe—stated that Lynn's "elected form of benefit payment was a Life Annuity with benefit payments ceased upon death" and that "[n]o further benefit [was] due."  *Id.* at ¶ 39.  Two more letters from Hooker & Holcombe—dated March 4, 2021, and June 11, 2021—provided more information.  *See id.* at ¶¶ 40-41.  They stated:

> [Lynn's] elected form of benefit payment, effective January 1, 2021, was a Life Annuity with a one-time-catch-up payment amount of $1,910.33.  [Lynn] was receiving a monthly disability benefit payment[] of $1,081.34 prior to her Life Annuity election.  We have stopped this monthly benefit effective with the February 1, 2021 payment.  A redeposit of the January 1, 2021 payment has been confirmed.  No further monthly benefit payments are due; however, the one-time-catch-up payment of $1,910.33 is owed to [Lynn's] Estate.

*Id.*

At some point, Cassandre and Samantha contacted the defendants in an attempt to change Lynn's election.  *See id.* at ¶¶ 42-43.  One "representative" of the defendants said that "a phone call could be made" to fix the error and explained that "many clients" make the "common mistake" of choosing a life annuity and also designating beneficiaries.  *Id.* at ¶ 42.  Cassandre and Samantha called the defendants "multiple

4

times" to make the change, but the defendants "unequivocally declined . . . to rectify the clerical error and process [Lynn's] pension benefit forms to reflect her intention to select an option with a fixed term or survivor benefit."  *Id.* at ¶ 43.

On July 30, 2021, Cassandre and Samantha—through counsel—sent a "demand letter" to Hooker & Holcombe requesting a response within 30 days.  *Id.* at ¶ 44.  The defendants did not respond.  *Id.* at ¶¶ 45-46.  Cassandre's and Samantha's attorney also "requested" a copy of the SPD "multiple times," but the attorney "received, several times, an [SPD] for a different HealthNow plan."  *Id.* at ¶ 48.  On December 16, 2021, Cassandre and Samantha "finally obtained a copy of the proper [SPD],"  *id.* at ¶ 49, which had never been provided to Lynn, *id.* at ¶ 30.

## PROCEDURAL BACKGROUND

The complaint alleges that the defendants failed to provide Cassandre and Samantha information about "whether or how to pursue or exhaust [their] administrative remedies."  *Id.* at ¶ 47; *see id.* at ¶ 30 (excerpting portion of SPD regarding administrative claims procedure); *id.* at ¶ 50 (alleging that the defendants failed to comply with administrative claims procedure in various ways).  Perhaps as a result of that allegation, the parties "agreed to process the claims for benefits under the administrative process" before proceeding with this litigation.  Docket Item 7-1 at 2.

On October 3, 2022, HealthNow's Employee Benefits Fiduciary Committee (the "Fiduciary Committee") denied Cassandre's and Samantha's claim.  Docket Item 20-1.  The denial letter discussed several "relevant sections" of Pension Plan A, *see id.*:

- Under section 4.6, "if a participant does not elect to begin . . . her retirement benefit sooner," the participant must "apply" for her "Normal Retirement

5

Benefit" when she reaches the later of "age 65 or the fifth anniversary of commencing participation in the Plan."[4]  *Id.* at 1; *see* Docket Item 25-5 at 21.

- Under section 5.3, "the normal form of benefit for an unmarried participant is a life annuity, payable during the participant's life, with no further benefits payable after . . . her death."[5]  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 26-27.

- Under section 5.4, "participants may elect an optional form of payment," such as joint and survivor annuity, "in lieu of the normal form."  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 27-28.

- Under section 5.5(a), "the participant can . . . elect an optional form of payment by submitting an election in writing during [her] benefit election period."  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 28.

- Under section 5.6, "if a participant who has elected an optional form of payment . . . dies prior to the due date of the first retirement benefit payment, the option shall be void and of no effect."[6]  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 30.

- Under section 7.6, "a participant who is receiving a disability benefit" may "instead commence receiving a pension benefit . . . at any time between ages 55 and 65 . . . if the participant so chooses, by submitting an election."  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 38.

- Under section 7.7, "a participant who is receiving a disability benefit . . . is only permitted to receive that disability benefit until" she reaches the later of age 65 or the fifth anniversary of commencing participation in the Plan.[7]  Docket Item 20-1 at 2; *see* Docket Item 25-5 at 38.

---

[4] The Fiduciary Committee explained that "[i]f the participant chooses not to apply [for retirement benefits] immediately, the benefits will have a delayed commencement date."  Docket Item 20-1 at 1.

[5] So, the Fiduciary Committee said, "if no optional form of payment is elected, no fixed term or survivor benefit will be owed to the participant's beneficiaries."  Docket Item 20-1 at 2.

[6] The Fiduciary Benefits Committee explains that section 5.6 therefore can "nullif[y]" a participant's election of "an optional form of benefit."  Docket Item 20-1 at 2.

[7] "At that time," the Fiduciary Committee explains, "the participant [may] . . . begin [her] vested [r]etirement [b]enefit . . . in the same manner as any other retiree."  Docket Item 20-1 at 2.

6

After reviewing Lynn's "completed election form and the terms of the Plan," the Fiduciary Committee determined that Cassandre's and Samantha's claim failed for three reasons. Docket Item 20-1 at 3. First, it found that Lynn's "election of a life annuity was valid and that her retirement benefits . . . should be paid in the form of a life annuity." *Id.* Second, it noted that even if Lynn's election of a life annuity were invalidated, the default form of benefit for an unmarried participant—such as Lynn—is a life annuity. *Id.* So invalidating Lynn's election would not change the outcome of Cassandre's and Samantha's claims. *Id.* Third, the Fiduciary Committee noted that "even if [Lynn] had attempted to make changes . . . to elect something other than the life annuity prior to her death, any such election would have been invalidated under [s]ection 5.6 . . . because [Lynn] passed away prior to her benefits having commenced." *Id.*

The Fiduciary Committee also rejected Cassandre's and Samantha's argument "that the delay in sending paperwork . . . prevented [Lynn] from having sufficient time to accurately make her election" because it found "no indication" that Lynn "ever requested any election forms or contacted the Plan to begin receiving her retirement benefits" before September 2020. *Id.*

After the Fiduciary Committee denied Cassandre's and Samantha's claims, the parties resumed litigation before this Court and the defendants moved to dismiss as noted above.

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

7

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

**I.    SUBJECT MATTER JURISDICTION**

As a threshold matter, the Court addresses the defendants' contention that it lacks subject matter jurisdiction. Docket Item 25-1 at 11-14; Docket Item 26-1 at 3-4.

The Second Circuit has explained—in an ERISA context, no less—the difference between "constitutional standing, prudential standing, and what was formerly known as 'statutory standing.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358-59 (2d Cir. 2016). "Constitutional standing refers to the requirement that parties suing in federal court establish that a 'Case' or 'Controversy' exists within the meaning of Article III of the United States Constitution." *Id.* at 358. Prudential standing involves "prudential principles that bear on the question of standing" and thus "are judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* (citation and internal quotation marks omitted).

"[S]tatutory standing," on the other hand, "in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Id.* at 359 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). "This inquiry 'does not belong' to the family of standing inquiries

8

. . . because 'the absence of a valid . . . cause of action does not implicate subject[ ]matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.'" *Id.* (emphasis omitted) (quoting *Lexmark*, 572 U.S. at 127-28 & n.4).  In fact, the Second Circuit has disclaimed the phrase "statutory standing" to avoid confusing the issues.  *Id.*

Here, the defendants argue that Cassandre and Samantha lack standing—and that this Court therefore lacks subject matter jurisdiction—because they are not "beneficiaries" within the meaning of ERISA.  Docket Item 25-1 at 11-14; Docket Item 26-1 at 3-4; *see Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 325-26 (E.D.N.Y. 2017) (citing 29 U.S.C. § 1132(a)(1)(B) and noting that generally, a plaintiff suing "to recover benefits" under ERISA must be either a "participant" in or "beneficiary" of a covered plan).  But that assertion does not implicate subject matter jurisdiction.  Rather, it is an argument that Cassandre and Samantha do not have a cause of action under ERISA and therefore lack what was formerly known as statutory standing.

Therefore, the Court has subject matter jurisdiction, and it treats the defendants' argument about Cassandre's and Samantha's beneficiary status as an argument on the merits of their claims.  *See infra* at 9-11.

## II.   FAILURE TO STATE A CLAIM

Cassandre and Samantha assert claims under four sections of ERISA: 502(a)(1)(B), 502(a)(2), 502(a)(3), and 502(c)(1).  Docket Item 1 at ¶¶ 51-74.

To prevail on a claim to recover benefits under section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), "a plaintiff must show that: (1) the [pension] plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was

wrongfully denied a benefit owed under the plan." *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (summary order) (citation omitted).  Under section 502(a)(2), 29 U.S.C. § 1132(a)(2), a beneficiary may bring an action "for appropriate relief" under section 409 of ERISA, 29 U.S.C. § 1109, which addresses breach of a plan fiduciary's duty.  Under section 502(a)(3), 29 U.S.C. § 1132(a)(3), a beneficiary may seek "equitable relief" to "redress . . . violations" of ERISA or the terms of a covered plan.  Finally, under section 502(c)(1), 29 U.S.C. § 1132(c)(1), a plan administrator who "fails or refuses to comply with a request" from a participant or beneficiary for certain information may "be personally liable" for statutory damages.

Each of those causes of action can be asserted only by a participant, a beneficiary, or—in some cases—a plan fiduciary or the Secretary of Labor.  *See* 29 U.S.C. § 1132.  Cassandre and Samantha clearly do not fall into the first, third, or fourth categories.  And according to the defendants, Cassandre and Samantha are not beneficiaries either.  *See* Docket Item 25-1 at 11-14; Docket Item 26-1 at 3-4.

Under ERISA, a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  "A person seeking to recover under ERISA qualifies as a . . . beneficiary . . . as long as [she has] a 'colorable claim to vested benefits.'" *Neuroaxis Neurological Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)).

Cassandre and Samantha argue that they are beneficiaries because Lynn designated them beneficiaries in her pension election forms.  Docket Item 29 at 11-12.

But that designation is not enough to give Cassandre and Samantha a colorable claim to benefits, as is required to sustain their claims.

As the defendants argue, Docket Item 25-1 at 12-13; Docket Item 26-1 at 4—and as explained by the Fiduciary Committee in its administrative denial letter, Docket Item 20-1—Cassandre and Samantha are not entitled to benefits for several reasons. First, Lynn's "signed and notarized" election forms clearly indicate that she selected a life annuity benefit. Docket Item 25-1 at 12; *see* Docket Item 25-8. Second, even if that election were invalidated, Lynn's benefits would "default" to a life annuity under section 5.3 of the Plan, so Cassandre and Samantha still would not be owed benefits. Docket Item 25-1 at 12. Third, even if the Court "changed [Lynn's] written election to one of the other options[,] . . . that election would still be null and void" under section 5.6 of the plan because Lynn died before her benefits were to commence. *Id.*

Cassandre and Samantha do not explain why they are entitled to benefits in light of the Fiduciary Committee's reasoning. *See* Docket Item 29. Nor do they "identify the specific terms" of Pension Plan A that allegedly entitle them to benefits. Docket Item 25-1 at 19-20; Docket Item 26-1 at 8; *see* Docket Items 1 and 29. The Court therefore concludes that, in light of the terms of Pension Plan A itself, Cassandre and Samantha have not plausibly alleged that they are beneficiaries.

Accordingly, Cassandre's and Samantha's complaint is dismissed.[8]

---

[8] The Court need not reach the defendants' other arguments in favor of dismissal, including that—beneficiary status aside—Cassandre and Samantha failed to state claims under sections 502(a)(1)(B), 502(a)(2), 502(a)(3), and 502(c)(1). *See* Docket Items 25-1 and 26-1. Nevertheless, the Court notes that Cassandre and Samantha seemingly abandoned their claims under sections 502(a)(1)(B), 502(a)(2), and 502(c)(1) by failing to address their deficiencies. *See* Docket Item 29; *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order).

**CONCLUSION**

For the reasons stated above, the defendants' motions to dismiss, Docket Items 25 and 26, are GRANTED. The Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 13, 2024
         Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

---

The Court also notes that Cassandre's and Samantha's claim for equitable relief under section 502(a)(3) based on the defendants' alleged failure to timely send Lynn the election forms fails both because they are not beneficiaries and for a second reason: As the Second Circuit has held, "money damage awards are not available under [section] 502(a)(3)." *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019); *see Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under [section] 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."). Cassandre and Samantha apparently seek equitable relief "for the denial of benefits due" to them. Docket Item 29 at 14-15. In other words, they seek money damages—not equitable relief, such as reformation of Pension Plan A. That relief simply is not available under these circumstances.